**Raymond J. BENTLEY, Appellant,**

**v.**

**NATIONAL STANDARD INSURANCE CO., Appellee.**

**No. 5322.**

Court of Civil Appeals of Texas, Waco.

March 21, 1974.

Rehearing Denied April 11, 1974.

Wright & Barber (Paul Schaumburg), Grand Prairie, for appellant.

Larry Gollaher, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is an instructed verdict case involving a Texas Standard Homeowner's Insurance Policy. Plaintiff-Appellant Raymond J. Bentley and wife were the insured parties of the insurance policy in question covering their home in Dallas, Texas, which policy was insured by Defendant-Appellee National Standard Insurance Company. The policy purports to protect the homeowner from "all risks" of physical loss to his dwelling, except for certain specified perils which are listed in the policy under "Exclusions."

The policy sued upon, dated July 14, 1970, contains the following provisions material to this case:

"PROPERTY INSURED

COVERAGE A—DWELLING, as described on Page 1 of this policy, while occupied by the Insured principally for dwelling purposes.

\*   \*   \*   \*   \*   \*

"PERILS INSURED AGAINST

Property as described and limited under Coverage A is insured against:

ALL RISKS OF PHYSICAL LOSS except as otherwise excluded.

\*   \*   \*   \*   \*   \*

EXCLUSIONS (Applicable to Property Insured under Coverages A and B and Perils Insured Against)—This insurance does not cover:

\*   \*   \*   \*   \*   \*

K. Loss under Coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools."

Plaintiff-Appellant Bentley, the insured, sued Defendant-Appellee Insurance Co. upon the policy because of damages to his dwelling. Trial was had to a jury, and at the conclusion of Plaintiff-Appellant's case the Defendant-Appellee moved for an instructed verdict. The trial court granted Defendant-Appellee's motion and entered judgment that Plaintiff-Appellant take nothing, from which Plaintiff-Appellant Bentley appeals. We affirm.

Plaintiff-Appellant's sole point of error asserts the trial court erred in granting Defendant's Motion for Instructed Verdict "because the Plaintiff introduced evidence that his loss was caused by drought and not by any of the exclusions from coverage" found in his policy. We overrule this point and affirm the trial court's judgment.

The Bentleys bought the house in question in 1967. At that time, it had some "hairline" cracks in the sheetrock in the interior of the house. Then in March, April, May, and June of 1971 the damage got worse and cracks starting occurring all over the house. On the exterior, there were cracks in the mortar between the bricks on the walls, and cracks around the top of some of the walls so that some individual bricks had come loose. Flashing and Shingles around the chimney were damaged. There was damage to the roof caused by a pulling apart of the shingles, which in turn caused water damage to the ceilings and around the light fixtures. The plastic lamina (often called by the trade name "Formica") on the kitchen cabinets was cracked. Tiles in the bathroom were separated or pulled apart from each other at the corners around the bathtub. Also in the interior, ceilings were separated from the walls, with cracks along the joints of the sheetrock. There were also cracks in the sheetrock other than along the joints throughout the house.

The worst of the damage to the house became apparent in June 1971. It was shown that during March, April, May, and June of 1971 the normal or average rainfall in Dallas, Texas, was 14.92 inches, whereas the actual rainfall for those months was 8.15 inches, meaning the actual

rainfall lacked 6.77 inches of being normal. So during these four months it was extremely dry; however, the house appeared to become more stabilized by August 1971 when the rains come.

In addition to Bentley the Plaintiff-Insured, two other witnesses testified for Plaintiff, a repair contractor and a civil engineer who was president of a foundation restoration company.

The contractor described the damage to the exterior, the interior, and the roof in detail. He attributed the cause of all this damage to be "severe settlement damage." He further testified that he could not see any other cause for such extensive damage. He said in effect that the settling of the foundation had caused the house to "flex," which brought about the damage hereinabove-described to the exterior, interior, and roof.

The civil engineer testified to the actual rainfall for March, April, May, and June 1971, as well as the average rainfall for those months in Dallas, Texas, showing a shortage of 6.77 inches below normal. He testified that this was such an excessive loss of moisture as could cause damage to foundations and houses, and in his opinion caused the damage to Bentley's house. He said the subsoil has to have moisture in it to keep its strength, and when the subsoil dries out, "it creates little voids through it, and therefore cannot support whatever is on it, a structure, a house, a highway, whatever it might be, and this causes it to ease down and cause your cracking." Also, conversely, when the soil absorbs moisture it expands. He further said the general area where Bentley's home is located has what is called a "mobile soil condition," meaning the earth expands and contracts due to the gain and loss of moisture. He testified in effect that all the damage to Bentley's house was caused by "foundation movement" in a downward direction, due to the lack of moisture in the soil. He said rainfall variations such as was experienced in the spring of 1971

do occur at intervals, and sometimes even to a greater degree than was had here, and that it is common to have such extremes in Texas weather.

■ In the case at bar, the insurance company pleaded specific exclusions which were set forth in the policy (including exclusion "K" hereinabove set out), and thus raised the issue of contract coverage. Therefore, the burden of proof was placed on Plaintiff-Bentley to show that his losses were not attributable to the excluded hazard, being here exclusion "K." Rule 94, Texas Rules of Civil Procedure; Hardware Dealers Mutual Insurance Co. v. Berglund (Tex.Sup.Ct.1965) 393 S.W.2d 309; Travelers Indemnity Co. v. McKillip (Tex.Sup.Ct.1971) 469 S.W.2d 160.

Plaintiff-Appellant says he has produced evidence to the effect that his loss was not attributable to the excluded perils, by showing that the damage was caused by the drought, and therefore the instructed verdict against him was improper. He says in his brief, "If the loss was caused by drought—it could not have been caused by any of the exclusions to coverage set up by the Defendant."

■ We do not agree with this contention. The language of exclusion "K" is clear and unambiguous, and being so must be taken in its ordinary meaning. See Employers Mutual Casualty Co. v. Nelson (Tex.Sup.Ct.1962) 361 S.W.2d 704. The damage to Bentley's house was without dispute and by the testimony of his own witnesses caused by the settling of the foundation and the cracking of the walls, ceilings and roof structures. This brings his damage squarely within exclusion "K" and to hold otherwise would be to render this exclusion meaningless. The fact that the settling of the foundation and the cracking of the walls, ceilings and roof were brought about or in turn caused by drought is immaterial. The language of exclusion "K" does not limit the "settling" and "cracking" to certain causes. In fact, the "settling" and "cracking", in order to

be excluded perils, are not limited to any cause, from the language used in this exclusion. For recent cases involving suits on homeowners "all risk" policies wherein Exclusion "K" was in issue, see McKool v. Reliance Ins. Co. (Dallas, Tex.Civ.App. 1965) 386 S.W.2d 344, error dismissed; State Farm Fire & Casualty Co. v. Volding (Dallas, Tex.Civ.App.1968) 426 S.W.2d 907, error refused NRE (summary judgment case); and Park v. Hanover Insurance Co. (Amarillo, Tex.Civ.App.1969) 443 S.W.2d 940, no writ history (summary judgment case).

Judgment of the trial court is accordingly affirmed.

Affirmed.