**Joe BALANDRAN and Dolores Balandran, Appellants,**

**v.**

**SAFECO INSURANCE COMPANY OF AMERICA, Appellee.**

No. 97–1093.

Supreme Court of Texas.

Argued Feb. 4, 1998.

Decided July 3, 1998.

John R. Harrison, San Antonio, for Appellants.

Brian Blakeley, San Antonio, Dan Morales, Austin, for Appellee.

PHILLIPS, Chief Justice delivered the opinion of the Court, in which GONZALEZ, ENOCH, SPECTOR, BAKER, ABBOTT and HANKINSON, Justices join.

This case comes to us on a certified question from the United States Court of Appeals for the Fifth Circuit. The issue certified is whether the 1991 Texas Standard Homeowner's Policy—Form B covers damage to the insured's dwelling from foundation movement caused by an underground plumbing leak. We hold that the policy provides this coverage.

## I

Safeco Insurance Company of America insured the home of Joe and Dolores Balandran. The form of the policy was the 1991 Texas Standard Homeowner's Policy—Form B. In September 1993, the Balandrans filed a claim against Safeco for damage to their home caused by an underground plumbing leak. The leak caused the soil to expand, damaging the home's foundation as well as its interior and exterior finishes. When Safeco denied the claim, the Balandrans sued the company in state district court. Safeco removed the case to federal court on diversity jurisdiction.

At trial, the jury found that the structural damage was caused by the plumbing leak and awarded the Balandrans $66,500. Safeco, however, moved for judgment as a matter of law, contending that the Balandrans' policy excluded this structural damage regardless of the underlying cause. The trial court granted this motion, rendering a take-nothing judgment for Safeco.

The Balandrans appealed to the Fifth Circuit Court of Appeals. While their appeal was pending, a separate Fifth Circuit panel considered this issue, holding that an identical policy did not provide coverage for foundation damage from a plumbing leak. *See Sharp v. State Farm Fire & Cas. Ins. Co.,* 115 F.3d 1258 (5th Cir.1997). Subsequently, however, the Texas Commissioner of Insurance issued a bulletin vigorously disagreeing with the *Sharp* decision. *See* TEX. DEP'T OF INS. BULLETIN B–0032–97 (Aug. 22, 1997). In light of these developments, the panel hearing the Balandrans' appeal certified to us the controlling question regarding policy coverage.

## II

The Balandrans' policy provides two types of coverage. "Coverage A" insures the dwelling itself, while "Coverage B" insures personal property. Coverage A provides the following protection:

> We insure against all risks of physical loss to the [dwelling] unless the loss is excluded in Section I Exclusions.

The exclusion relevant to this case is 1(h), which provides:

> We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.
>
> We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

Safeco argues that the damage to the Balandrans' home clearly falls under this exclusion.

The Balandrans apparently concede that, if the exclusion applies, it excludes their claim. However, they present three arguments about why the exclusion does not apply. First, they contend that language in Coverage B (the personal property section of the policy) creates an exception to exclusion 1(h) when the structural damage results from a plumbing leak. Second, they argue that exclusion 1(h) does not apply to structural damage resulting from an underlying cause—in this case a plumbing leak—which itself is not an excluded peril under the policy. Finally, the Balandrans argue that the last sentence of exclusion 1(h) (the "ensuing loss" provision) creates an exception to exclusion 1(h) under the present circumstances. Because we conclude that the Balandrans are entitled to prevail on their first argument, we do not reach the other two.

### III

#### A

Unlike Coverage A, which insures the dwelling against "all risks," Coverage B insures personal property only against twelve enumerated perils. The ninth of these twelve perils is:

> **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.
>
> A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.
>
> *Exclusions 1.a through 1.h under Section I Exclusions do not apply to loss caused by this peril.*

(bold in original, italics added). Even though Coverage B deals with personal property loss, which the Balandrans did not suffer, the Balandrans rely heavily on the last sentence quoted above. They argue that this provision (the "exclusion repeal provision") means exactly what it says: Exclusions 1(a) through 1(h) do not apply to a loss caused by a plumbing leak. Because exclusion 1(h) does not apply to the Balandrans' loss, it is cov-

ered under Coverage A, which insures against any risk to the dwelling. In other words, the exclusion repeal provision, on its face, applies to any "loss," not just personal property losses.

Safeco, relying on the structure of the policy, argues that the exclusion repeal provision applies only to personal property losses resulting from a plumbing leak. Because Coverage B deals with personal property coverage, Safeco contends that the exclusion repeal provision should be similarly limited. Safeco argues that we may not construe this sentence without considering its context within the policy. *See State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex. 1995) ("[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract.").

As we have already noted, one Fifth Circuit panel has adopted Safeco's approach. *See Sharp v. State Farm Fire & Cas. Ins. Co.,* 115 F.3d 1258 (5th Cir.1997). Under identical facts, the court held that the damage to the dwelling was excluded under exclusion 1(h), and that the exclusion repeal provision applied only to personal property losses:

> We are sympathetic to the Sharps' situation, but we cannot agree that text specifically included in Coverage B, which applies only to personal property, may be imported into Coverage A, which applies to the dwelling or house, in order to create coverage for a loss that does not involve personal property damage. The Sharps' policy clearly and unambiguously divides dwelling losses and personal property losses into two separate "coverages." It therefore would appear to be nonsensical, and a rejection of the obvious structure of the policy, to reach into text that applies solely to Coverage B (Personal Property) to determine the extent of coverage provided under Coverage A (Dwelling).

115 F.3d at 1262.

#### B

■ Several rules of construction guide our consideration of this issue. First, insur-

ance contracts are subject to the same rules of construction as other contracts. *See Beaston,* 907 S.W.2d at 433; *National Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex.1995); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). Our primary goal, therefore, is to give effect to the written expression of the parties' intent. *See Beaston,* 907 S.W.2d at 433; *Forbau,* 876 S.W.2d at 133. We must read all parts of the contract together, *see Beaston,* 907 S.W.2d at 433, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *See United Serv. Auto. Ass'n v. Miles,* 139 Tex. 138, 161 S.W.2d 1048, 1050 (1942). While parol evidence of the parties' intent is not admissible to create an ambiguity, *see National Union,* 907 S.W.2d at 520, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996); *National Union,* 907 S.W.2d at 520.

If, after applying these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. *See National Union,* 907 S.W.2d at 520. Where an ambiguity involves an exclusionary provision of an insurance policy, we "must adopt the construction ... urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *see also Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977).[1]

Applying these rules, we conclude that the exclusion repeal provision is subject to two reasonable interpretations, and is therefore ambiguous. We are mindful of the Fifth Circuit's reasoning in *Sharp,* and we agree that it reflects one reasonable interpretation of the policy language. However, the Balandrans' interpretation is also reasonable. First, the policy on its face states that exclu-

sion 1(h) does not apply to "loss" caused by a plumbing leak; this repeal of exclusion 1(h) is not expressly limited to "personal property loss." That the exclusion repeal provision is contained in Coverage B does not necessarily dictate Safeco's narrow reading. Instead, the exclusion repeal provision could be located under Coverage B simply because that is the only place in the policy that the "accidental discharge" risk is specifically described. Because the exclusion repeal provision applies solely to that risk, it is logical for it to be adjacent to the policy's description of the risk.

Further, Safeco's construction of the policy renders a part of the policy language meaningless. The exclusion repeal provision applies to "[e]xclusions 1.a. through 1.h." Under Safeco's reading, of course, exclusions 1(a) through 1(h) are repealed only for personal property losses caused by a plumbing leak. However, exclusion 1(h) on its face applies only to damage to the dwelling. Thus, if Safeco's reading is correct, it would have been unnecessary to extend the exclusion repeal provision to exclusion 1(h), because that exclusion can never affect personal property losses. Under Safeco's approach, therefore, the part of the exclusion repeal provision referring to exclusion 1(h) is without any effect.

The Balandrans' interpretation becomes even more reasonable when we consider the circumstances surrounding the promulgation of this policy form. Article 5.35 of the Texas Insurance Code, subject to certain exceptions not relevant here, requires insurers to use policy forms adopted or approved by the Commissioner of Insurance. The policy at issue here was promulgated in 1990 by an advisory committee appointed by the Board of Insurance, the Commissioner's statutory predecessor. The Board directed this committee, which consisted of insurance industry representatives and consumer representatives, "to assist the Board with conversion of the Texas Standard Homeowners Policies

---

1. This widely followed rule is an outgrowth of the general principle that uncertain contractual language is construed against the party selecting that language. *See* SEGALLA, 2 COUCH ON INSURANCE § 22.14 (3d ed.1997). It is also justified by the

special relationship between insurers and insureds arising from the parties' unequal bargaining power. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987).

into a simplified, easy-to-read form for use in the State of Texas." *See* RECORD OF OFFICIAL ACTION OF THE STATE BD. OF INS. no. 54929 (July 18, 1989). The Board expressly instructed the committee "that such conversion process shall not in any manner restrict coverages currently available to the insured under a homeowners policy." *Id.*

The policy in effect when the committee started its work unambiguously covered foundation damage resulting from a plumbing leak. Effective since 1978, that policy contained exclusion repeal language similar to that at issue here, but it was located in the *exclusions* section. Thus, one could not argue that the exclusion repeal provision applied only to personal property loss. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 446 (Tex.1997) ("Under an express exception, however, these exclusions [referring to, among others, the foundation-damage exclusion] do not apply to losses caused by an 'accidental discharge, leakage or overflow of water' from within a plumbing system.").[2] The 1978 policy, like the present one, also recited the "accidental discharge" language in the Coverage B (personal property) section. The committee, in promulgating its "easy-to-read" policy, moved the exclusion repeal language to section B, adjacent to the "accidental discharge" language there, thus eliminating the need to restate this language. The Board subsequently adopted the committee's form after being assured by the committee's chairman, Don Olsen (a representative of State Farm Fire & Casualty Insurance Company), that the revisions were "accomplished in line with [the Board's] charge of making sure that there is no restriction in coverage available to any insured under an existing homeowner policy in Tex-

as." *See* FEBRUARY 14, 1990, HEARING ON PROPERTY INS. RULES CONCERNING TEXAS HOMEOWNERS POLICY AND RELATED MATTERS at 5. The circumstances surrounding the drafting of this policy thus support the Balandrans' theory that the exclusion repeal provision is located within Coverage B merely to simplify the policy, not to restrict the scope of the exclusion repeal.[3]

Safeco cites several cases for the proposition that exclusion 1(h) excludes damage to foundations, regardless of the underlying cause. *See, e.g., General Ins. Co. of America v. Hallmark,* 575 S.W.2d 134, 136 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.); *Lambros v. Standard Fire Ins. Co.,* 530 S.W.2d 138, 140 (Tex.Civ.App.—San Antonio 1975, writ ref'd); *Bentley v. National Standard Ins. Co.,* 507 S.W.2d 652, 654 (Tex.Civ.App.— Waco 1974, writ ref'd n.r.e.). These cases construe the standard homeowner's policy in effect before 1978, which contained no exclusion repeal provision for accidental discharge of water from a plumbing unit. These cases do not apply to the issue before us.

In sum, we conclude that the Balandrans' interpretation of the exclusion repeal provision is not unreasonable. Because the Balandrans are the insureds, we adopt their interpretation as the proper construction of the policy.

\* \* \*

Accordingly, we hold that exclusion 1(h) in the 1991 Texas Standard Homeowner's Policy—Form B does not apply to loss caused by the accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance.

---

**2.** The relevant language from the 1978 policy was as follows:
EXCLUSIONS (Applicable to Property Insured under Coverages A and B and Perils Insured Against)—This insurance does not cover:
. . .
  k. Loss under Coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.
The foregoing Exclusions a, b, c, f, h, i, j and k shall not apply to Accidental discharge, leakage or overflow of water or steam from within

a plumbing, heating or air conditioning system or a domestic appliance (including necessary tearing out and replacing any part of the building covered).

**3.** Contrary to the dissenting justices' contention, we are not considering this evidence for the purpose of creating an ambiguity. Because the Balandrans' interpretation of the contract language is reasonable, an ambiguity exists on the face of the policy. We merely highlight this evidence because it further supports the result we reach.

OWEN, Justice, filed a dissenting opinion, in which HECHT, Justice, joins.

I am sympathetic to the Balandrans' plight. But, for the reasons expressed by the Fifth Circuit in *Sharp v. State Farm Fire & Casualty Insurance Co.*, 115 F.3d 1258 (5th Cir.1997), the Texas Standard Homeowner's Policy unambiguously excludes damage to a foundation caused by a plumbing leak. In finding an ambiguity, the Court ignores the structure of the policy. The Court is also unduly swayed by the arguments of the Commissioner of Insurance that the policy provides coverage. I respectfully dissent.

## I

There is one matter on which all can agree. The so-called "easy-to-read" standard-form policy is very poorly drafted. As will be considered in more detail below, one of the provisions on which the Court relies is inoperative and meaningless in several respects. Nevertheless, the shortcomings of the drafting in some areas do not render the sections of the policy that govern the particular coverage question before us ambiguous.

The issue is whether the 1991 Texas Standard Homeowner's Policy (Form B) provides coverage for dwelling damage from foundation movement caused by an underground plumbing leak. The policy divides property coverage into two sections: "Coverage A," for the dwelling, and "Coverage B," for personal property. The policy maintains this division both in describing the property that is insured and in describing the risks that are insured against. The pertinent provisions of the policy are contained in Appendix A.

The policy provides in straightforward language that it does not cover loss under Coverage A (Dwelling) "caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings...." App. A, para. 1(h) of Sec. I (exclusions). Thus, under exclusion h, settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, and ceilings is excluded from coverage regardless of the cause of the settlement, cracking, bulging, shrinking, or expansion.

The Court, however, reaches into Coverage B, the personal property section of the policy, to find language that it says negates exclusion h. But the provision cited by the Court applies only to personal property losses. Under Coverage B, Safeco insured personal property against twelve enumerated perils, one of which is a plumbing leak:

> Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance.

> A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

> Exclusions 1.a though 1.h under Section I Exclusions do not apply to loss caused by this peril.

App. A, para. 9 of Coverage B.

Nothing in this or any other part of Coverage B even remotely suggests that settling, cracking, or expansion of foundations, walls, floors, or ceilings is covered, even if the ultimate cause in fact of the settlement or cracking is a plumbing leak. The only part of Coverage B that relates to the dwelling is a limited provision that covers the cost of tearing out and replacing the part of the dwelling necessary to repair a plumbing system. By no stretch of the imagination does this extend coverage to settlement or cracking of the foundation.

The Court, however, relies on the last sentence of this limited provision, which it refers to as the "exclusion repeal provision" and which provides: "Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril." App. A, para. 9 of Coverage B. The Court concludes that, because the word "loss" in this provision is not expressly limited to personal property losses, it must apply to any loss, including damage to the dwelling. Thus, the Court concludes, exclusions 1(a) through 1(h) do not apply to structural damage caused by a plumbing leak. *See* 972 S.W.2d at 740.

This interpretation, in both my view and that of the United States Court of Appeals for the Fifth Circuit, is unreasonable. *See Sharp,* 115 F.3d at 1263; *see also Jimenez v. State Farm Lloyds,* 968 F.Supp. 330, 333 (W.D.Tex.1997). The exclusion repeal provision is located in the section of the policy dealing with personal property losses. While the one sentence on which the Court focuses may not contain the words "personal property," such a limitation is unnecessary given its location. The word "loss" in the exclusion repeal provision can reasonably refer only to the type of loss at issue in Coverage B, which is personal property loss.

This Court has warned against reading policy language out of context:

> To [effectuate the parties' intent, courts] must read all parts of a contract together. Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract.

*State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995) (citations omitted). Completely ignoring its own admonition, the Court seizes on one sentence without regard for its location in the policy.

The Fifth Circuit, considering this precise issue in *Sharp,* got it exactly right:

> We are sympathetic to the Sharps' situation, but we cannot agree that text specifically included in Coverage B, which applies only to personal property, may be imported into Coverage A, which applies to the dwelling or house, in order to create coverage for a loss that does not involve personal property damage. The Sharps' policy clearly and unambiguously divides dwelling losses and personal property losses into two separate "coverages." It therefore would appear to be nonsensical, and a re-

jection of the obvious structure of the policy, to reach into text that applies solely to Coverage B (Personal Property) to determine the extent of coverage provided under Coverage A (Dwelling).

115 F.3d at 1262. In order to except plumbing-leak damage from exclusion h, the drafters should have placed such language in the Coverage A section dealing with damage to the dwelling or in exclusion h, as was the case in the post–1978 version of the policy.[1] They did not. (The post–1978 policy was at issue in *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444 (Tex.1997), not the version at issue here, which reflects amendments made in 1990.)

While it may be true that the drafters did not intend to change the substance of the post–1978 standard policy form when they promulgated the present form, the unambiguous language they chose nevertheless effected a change. The policy at issue in this case is very similar to the pre–1978 policy form that unquestionably excluded foundation damage caused by a plumbing leak. *See General Ins. Co. v. Hallmark,* 575 S.W.2d 134, 136 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.) (holding that what is now exclusion h excluded "settling of the foundation and cracking of the walls brought about by a water leak" underneath the home); *Park v. Hanover Ins. Co.,* 443 S.W.2d 940, 942 (Tex. Civ.App.—Amarillo 1969, no writ) (holding that loss from accidental discharge of water from a plumbing system resulting in structural damage was excluded by what is now exclusion h), *abrogated on other grounds by National Surety Corp. v. Adrian Assocs.,* 650 S.W.2d 67 (Tex.1983); *see also Lambros v. Standard Fire Ins. Co.,* 530 S.W.2d 138, 141–42 (Tex.Civ.App.—San Antonio 1975, writ ref'd); *Bentley v. National Standard Ins. Co.,* 507 S.W.2d 652, 654 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.).

---

1. The post–1978 policy provided as follows:
   EXCLUSIONS (Applicable to Property Insured under Coverages A and B and Perils Insured Against)—This insurance does not cover:
   . . .
   k. Loss under Coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

> The foregoing Exclusions a, b, c, f, h, i, j and k shall not apply to Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or a domestic appliance (including necessary tearing out and replacing any part of the building covered).

As an additional justification for its construction of what it calls the "exclusion repeal provision," the Court asserts that, if the repeal were only for personal property losses, the repeal would be "without any effect." 972 S.W.2d at 741–42. But the repeal is wholly without effect in other respects. The repeal extends to exclusion b, which excludes "loss caused by smog or by smoke from industrial or agricultural operations." App. A, para. 1(b) of Sec. I (exclusions). I respectfully submit that damage to personal property caused by smog or smoke from industrial or agricultural operations would never coincide with the accidental discharge peril. Nor would loss caused by windstorm, hurricane, or hail to the property enumerated (exclusion c) ever coincide with the accidental discharge peril in Coverage B. The same can be said of exclusion d, which excludes theft of personal property when it is located outside the insured residence. And when would the repeal of exclusion g, which excludes loss caused by animals or birds kept by the insured, have any meaning in conjunction with the accidental discharge peril?

Because the Court's interpretation of the policy is unreasonable, it does not create an ambiguity. *See National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995) ("If ... the language of a policy or contract is subject to two or more *reasonable interpretations,* it is ambiguous." (emphasis added)).

## II

The Court also resorts to inadmissible extrinsic evidence to find support for its construction of the policy. Because insurance policies are contracts, however, we must "ascertain the true intent of the parties *as expressed in the instrument." National Union,* 907 S.W.2d at 520 (emphasis added). When the policy is not ambiguous on its face, extrinsic evidence may not be used to create an ambiguity. *See id.*

Ignoring this rule of construction, the Court cites statements from the Board of Insurance and testimony from a Board hearing. While the Court suggests that it is merely examining the "circumstances surrounding the promulgation of this policy form," 972 S.W.2d at 741–42, the Court relies on parol evidence directly relating to the drafters' intent that conflicts with the language of the policy. If this is not inadmissible extrinsic evidence, what is? This case is notably similar to *National Union,* in which the parties disputed whether an insurance policy's "absolute pollution exclusion" applied to an acid spill at a construction site. 907 S.W.2d at 518. The insured sought discovery regarding the insurers' "understanding" of this provision, specifically that they " 'understood that the pollution exclusions would not exclude coverage in construction accident situations.' " 907 S.W.2d at 520–21. The Court rejected this request, concluding that the insured was simply seeking "an opportunity to discover parol evidence going to the parties' intentions in order to create a latent ambiguity." *Id.* at 521. The Court reiterated that "no issue regarding the parties' intentions is raised *unless* the policy is ambiguous—and evidence of those intentions cannot be used to create an ambiguity." *Id.* at 521 n. 5.

Addressing this same issue in *Sharp,* the Fifth Circuit correctly concluded that "the Sharps may not point to the revision process to create an ambiguity." 115 F.3d at 1262; *see also Jimenez,* 968 F.Supp. at 333. Ironically, the federal courts have correctly applied Texas law, while this Court has not.

## III

The Balandrans present two other arguments why exclusion h does not apply, which the Court does not address. These arguments are likewise without merit.

### A

The Balandrans first point to the "ensuing loss" language of exclusion h. Exclusion h provides in full:

We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

*We do cover ensuing loss caused by collapse of building or any part of the build-*

*ing, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.*

App. A., para. 1(h) of Sec. I (exclusions) (emphasis added). The Balandrans argue that, under the italicized portion (the "ensuing loss" provision), exclusion 1(h) does not apply to loss from "water damage" if the loss is otherwise covered under the policy. Because their loss was caused by a plumbing leak, and would otherwise be covered under the "all risks" protection of Coverage A, the Balandrans argue that their loss falls under the ensuing loss provision.

This argument ignores the word "ensuing." We have held that this provision covers only loss *resulting from* the type of damage excluded under h. *See Lambros,* 530 S.W.2d at 141–42 ("Again, the plain language of the exception compels the conclusion that the water damage must be a consequence, i.e., follow from or be the result of the types of damage enumerated in exception [1(h)]."); *see also Park,* 443 S.W.2d at 942 (holding that accidental discharge of water from a plumbing system that resulted in structural damage was not covered and that loss did not result form "ensuing water damage"). In other words, if the shifting foundation were to cause a plumbing leak that further damaged the walls of the house, the further damage to the walls would be covered. As we held in *Lambros,* because the "water damage was the cause, rather than the consequence, of settling, etc., exclusion [h] is applicable." *Id.* In this case, the plumbing leak was the cause of the foundation damage rather than a result of it. Therefore, the ensuing loss provision does not provide coverage.

**B**

The Balandrans, supported by amicus curiae Texas Department of Insurance (TDI), also argue that exclusion h does not exclude foundation damage unless the underlying cause of the damage—in this case a plumbing leak—is also an excluded peril. TDI offers hypotheticals of what might happen if the Court did not adopt this approach. For example, it posits that there would be no coverage if a tree falls on a house and cracks the roof, since exclusion h applies to "cracking . . . of . . . roof structures." Similarly, there would be no coverage if a car careens into a house and cracks a wall, since exclusion h applies to "cracking . . . of . . . walls."

This construction of the policy cannot be squared with our holding in *Lambros,* 530 S.W.2d at 140. In *Lambros,* the insured, by paying an additional premium, had an "underground water" exclusion omitted from his policy. The policy, however, still contained a foundation damage exclusion similar to that at issue here. When the insured subsequently suffered foundation damage from underground water, he argued that the foundation damage exclusion did not apply because underground water was a covered peril. This Court (by refusing the application for writ of error) rejected the insured's argument:

> Even after this plaintiff-oriented rewriting, it is clear that loss caused by settling, etc. is not covered. The cause of the settling is irrelevant, unless exclusion k [the foundation-damage exclusion] is also rewritten to limit it to settling, etc., not caused by underground water. We conclude that the deletion of the subsurface water exclusion did not eliminate exclusion k or limit it to settling not caused by underground water.

*Id.* Thus, exclusion h in the Balandrans' policy excludes loss from an expanding foundation, regardless of the underlying cause. TDI's hypotheticals are simply inapposite because exclusion h was never intended to cover the type of sudden structural damage resulting from a falling tree or an out-of-control car.

\* \* \* \* \*

I would hold that the policy unambiguously excludes coverage for damage to a dwelling caused by an expanding foundation, even when the underlying cause is a plumbing leak.

**APPENDIX A**

**SECTION I —PERILS INSURED AGAINST**

**COVERAGE A (DWELLING)**

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

## COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. Fire and Lightning.

2. Sudden and Accidental Damage from Smoke.

3. Windstorm, Hurricane and Hail.

4. Explosion.

5. Aircraft and Vehicles.

6. Vandalism and Malicious Mischief.

7. Riot and Civil Commotion.

8. Collapse of Building or any part of the building.

9. Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance.

   A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

   Exclusions 1.a through 1.h under Section I Exclusions do not apply to loss caused by this peril.

10. Falling Objects.

    This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. Freezing of household appliances.

12. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

## SECTION I—EXCLUSIONS

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

   a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

   b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

   c. We do not cover loss caused by windstorm, hurricane or hail to:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

      (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

   d. We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

      (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured,** except while an **insured** is temporarily living there.

      (2) building materials and supplies not on the **residence premises.**

   e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

   f. We do not cover loss caused by:

      (1) inherent vice, wear and tear or deterioration.

      (2) rust, rot, mold or other fungi.

(3) dampness of atmosphere, extremes of temperature.

(4) contamination.

(5) vermin, termites, moths or other insects.

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

g. We do not cover loss caused by animals or birds owned or kept by an **insured** or occupant of the **residence premises.**

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

h. We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

i. We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

j. We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain plumbing, heating and air conditioning systems of water.

k. We do not cover loss caused by earthquake, landslide or earth movement.

## 2. GOVERNMENTAL ACTION.

We do not cover loss caused by the destruction of property by order of governmental authority.

But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

## 3. BUILDING LAWS.

We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

## 4. WAR DAMAGE.

We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

## 5. NUCLEAR DAMAGE.

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.