REVISED MARCH 18, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-10692
Summary Calendar

DONALD R MITCHELL

Plaintiff - Appellant

v.

ACE AMERICAN INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas, Dallas
No. 3:06-CV-1013

Before KING, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Donald R. Mitchell brought suit against his insurance provider, defendant-appellee Ace American Insurance Company, after it denied Mitchell's application for disability benefits. The district court granted summary judgment in favor of Ace American Insurance Company. Mitchell appeals the judgment with respect to his breach of contract cause of action. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 2003, plaintiff-appellant Donald R. Mitchell, a professional football player, signed to play for the Dallas Cowboys (the "Cowboys"), a member of the National Football League (the "NFL"), as a defensive back. In April 2003, he purchased a $1 million athlete's individual disability income policy (the "policy") from defendant-appellee Ace American Insurance Company ("Ace"), covering the period from April 21, 2003 to April 21, 2004. On August 28, 2003, Mitchell injured his left ankle during a pre-season game. The Cowboys' medical staff diagnosed the injury as acute posterior tibial tendinitis, and Mitchell did not play for the remainder of the 2003 football season due to the injury. On February 9, 2004, Mitchell was released from the Cowboys' rehabilitation program. At that time, the Cowboys' medical reports indicated that he was "running and working . . . with no complaints or problems."

On June 4, 2004, the Cowboys' team physician cleared Mitchell "for all practice activities," and Mitchell participated in full practices for the Cowboys' "mini-camp" from June 5, 2004 through June 11, 2004. According to Mitchell, he missed at least two days of mini-camp and was unable to fully participate in all camp activities because he experienced pain and swelling in his left ankle. On July 30, 2004, at the start of the Cowboys' "training camp," Mitchell signed an Acknowledgment of Receipt of Medical Information in which he attested that he was "not [at that time] suffering from any physical and/or mental disability" that prevented him from playing professional football. Mitchell reports that after approximately three days of training camp, he again started to feel pain in his left ankle. Nevertheless, he continued to participate in the training camp and even played in the Cowboys' first three pre-season games. Mitchell maintains that the condition of his left ankle limited his movement, causing his performance to suffer during those pre-season games. However, the Cowboys'

episode recap report indicates that Mitchell participated in each of those games with "no limitations."

On August 31, 2004, following the third pre-season game, the Cowboys cut Mitchell from the roster. Upon his dismissal, Mitchell signed a medical waiver acknowledging that "he [was] not [at that time] suffering from any disability, physical or mental, incurred as a result of his service as a professional football player for the Club[, the Cowboys]." The waiver further stated that, so far as Mitchell could determine, "he [was] not physically unable to play professional football for the Club as a result of any injury suffered during the period of employment with the Club." Mitchell claims, however, that after his release from the Cowboys, he consulted a foot and ankle specialist and learned that he could not continue as a professional football player because of the condition of his ankle.

On September 22, 2004, Mitchell filed an application for disability benefits with Ace. Ace denied the claim by letter dated December 9, 2004. Mitchell then filed suit against Ace in state court on February 14, 2006, and the case was removed to federal district court on June 8, 2006. Ace filed a motion for partial summary judgment on Mitchell's causes of action for breach of contract and violations of the Texas Insurance Code, which the district court granted on January 26, 2007. Subsequently, Mitchell filed an unopposed motion to dismiss the remainder of his claims. On May 21, 2007, the court issued a final judgment dismissing all of Mitchell's claims. Mitchell timely filed his notice of appeal on June 18, 2007. Mitchell only appeals the district court's judgment dismissing his breach of contract claim with prejudice.

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same standard as the district court. Stotter v. Univ. of Texas at San Antonio, 508 F.3d 812, 820 (5th Cir. 2007). "A party is entitled to summary judgment only if 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(c)). We view the facts in the light most favorable to the party opposing the summary judgment motion and draw all reasonable inferences in that party's favor. Id.

In diversity cases, such as this one, we look to the substantive law of the forum state. Texas Indus., Inc. v. Factory Mut. Ins. Co., 486 F.3d 844, 846 (5th Cir. 2007). Under Texas law, insurance policies are governed by the same rules of construction that apply to contracts generally. Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 740–41 (Tex. 1998). The primary goal is to give effect to the written expression of the parties' intent. Id. at 741. "The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 99 F.3d 695, 700 (5th Cir. 1996) (citing Sec. Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex. 1979)). The policy should be considered as a whole so as to give effect and meaning to each part. Id.; see Balandran, 972 S.W.2d at 741 ("We must read all parts of the contract together, . . . striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative.") (internal citation omitted).

"Texas contract interpretation law indicates that '[i]f policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law.'" Texas Indus., Inc., 486 F.3d at 846 (quoting Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003)). Whether a contract is ambiguous is a question of law for the court to decide. Id. "The fact that the parties offer different contract interpretations does not create an ambiguity." Id. An ambiguity exists only if the contract

language is susceptible to more than one reasonable interpretation. Id.; Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). The court must adopt the insured's construction of an ambiguous provision, "as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Nat'l Hudson Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); see Balandran, 972 S.W.2d at 741.

Pursuant to the policy, Mitchell must satisfy five conditions precedent for coverage. Ace based its summary judgment motion on Mitchell's purported failure to meet the third condition—that he did not "satisf[y] the Elimination Period as shown in the SCHEDULE." The SCHEDULE defines the Elimination Period as:

> Twelve (12) consecutive months.
> No covered claim shall exist and no benefit shall be due
> or payable under this Policy until the Insured has been
> Totally Disabled for this period and certified to be
> Permanently Totally Disabled at the end of the period.

The Definitions section of the policy further provides that the "Elimination Period" means a "continuous period of time . . . during which the Insured must be Totally Disabled and for which no benefits are due or payable."

Therefore, coverage depends on whether Mitchell was "Totally Disabled" for a consecutive twelve month period. The policy defines "Total Disablement, Totally Disabled or Total Disability" as "the Insured's complete and total physical inability as a result of the Accidental Bodily Injury or Sickness or Disease to Participate, as defined in the Policy, in his or her Occupation as stated in the SCHEDULE." "Participate," in turn, means:

> 1)    in a team sport, that the Insured is:
> a) on the active roster of:

> (1) the professional sports team as stated in the SCHEDULE for which the Insured is contractually obligated to play; or
> (2) the collegiate sports team as stated in the SCHEDULE for which the Insured plays;
> and/or
>
> b) dressed (in uniform) or available or physically able to practice or play for a team in the League as defined in the Policy.

R. 165 (emphasis added).

Ace argues that it did not breach the policy when it declined to pay Mitchell's claim because Mitchell was not "Totally Disabled" for twelve consecutive months after sustaining his ankle injury since he "participated" in professional football during that time. As evidence of Mitchell's "participation," Ace points to Mitchell's involvement in the Cowboys' mini and training camps in the summer of 2004 and the three pre-season games that Mitchell played in August 2004, prior to the start of the 2004 season. The district court agreed with Ace and determined that Mitchell failed to satisfy the policy's Elimination Period because "Mitchell was necessarily in uniform and was not only available and physically able to practice and play for an NFL team, but he actually did practice and play for an NFL team within a year of injuring his left ankle." Since Mitchell had failed to meet an essential condition of coverage, the district court concluded that "Ace did not breach the policy in denying Mitchell's claim."

Mitchell first contends that the district court erred because Ace's use of the conjunctive-disjunctive phrase "and/or" in the definition of "participate" created a patent ambiguity in the policy. Mitchell, however, did not present this argument in his response to Ace's motion for summary judgment, even though Ace had clearly relied on the disjunctive, "or," to maintain that Mitchell had "participated" and thus had failed to satisfy one of the conditions precedent for coverage under the policy. Instead, Mitchell claimed that ambiguity was caused

by the use of the undefined term "active roster" in the "participate" definition. "Although on summary judgment the record is reviewed de novo, this court for obvious reasons, will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." Guar. Nat'l Cos. v. Atchison, Topeka & Santa, 149 F.3d 1177, 1177 (5th Cir. 1998) (emphasis added). Consequently, we will not consider this point of error raised for the first time on appeal.[1]

Mitchell's second argument relies on the policy's "rehabilitation clause," which states:

> REHABILITATION
>
> PROFESSIONAL FOOTBALL
> The Insured shall be deemed conclusively to have been fully-rehabilitated and no claim shall be payable hereunder:
> (a)    if the Insured signs a new professional contract and passes a professional team physical, or
> (b)    in the event the Insured Participates in four (4) or more Regular Season, play-off or championship games, or any combination thereof, during the period of twelve (12) months from the commencement of a Total Disablement or before the end of the immediately following Regular

---

[1] Even if Mitchell had not waived this specific issue, he would not prevail on appeal. According to Mitchell, the definition of "participate" should be read to mean that the insured is "participating" only if he is on the active roster and is dressed, available, or physically able to practice or play. But Mitchell's interpretation ignores the term "or"—the same error of which he accuses the district court and Ace with respect to the use of the word "and." The plain and unambiguous meaning that gives effect to the parties' intent is that the insured "participates" if the insured: (1) is on the active roster of the Cowboys and is dressed, available, or physically able to practice or play; OR (2) is on the active roster of the Cowboys; OR (3) is dressed in uniform, available, or physically able to practice or play for an NFL team. Because Mitchell was dressed in uniform, available to play, and actually did play in three pre-season games for the Cowboys, he "participated" and thus was not totally disabled for the duration of the Elimination Period, a condition precedent to Ace's liability under the policy. Consequently, the district court's dismissal of Mitchell's breach of contract cause of action was proper.

Season from the one in which the Insured became
Totally Disabled, whichever period is the longer.

Mitchell argues that, considering the policy as a whole, the rehabilitation clause modifies the Elimination Period and the "participate" definition so that an insured is permitted a rehabilitation period to practice and play in pre-season games before he is deemed ineligible for coverage. In effect, Mitchell's argument is that even though he did not meet the requirements of the Elimination Period, he is still entitled to coverage because he did not satisfy the terms of the rehabilitation provision, as he only played in three pre-season games rather than four regular season games. Moreover, Mitchell contends that the definition of "participate" must be informed by the rehabilitation clause to mean that an insured "participates" in a team sport only if he plays in four or more regular season games, otherwise the rehabilitation clause would be rendered inoperative.

We agree with the district court's conclusion that the "plain terms of the policy cannot bear Mitchell's interpretation, which would vitiate the Elimination Period and/or the meaning of 'participate' as defined in the policy." Mitchell's interpretation disregards the purpose of the rehabilitation clause and amounts to a complete re-writing of the policy's "participate" definition, an unreasonable construction that we cannot accept. The rehabilitation clause describes a set of circumstances under which an insured will be conclusively presumed to have been "fully-rehabilitated" such that no claim is payable. The purpose of the rehabilitation clause is to restrict, not to enlarge, the scope of coverage by providing more ways in which claims may be denied even if the insured remains totally disabled for the duration of the Elimination Period. For example, in a case where an insured satisfied the Elimination Period, he may still be denied coverage under the rehabilitation clause if he: (1) signed a new professional contract and passed a professional team physical; or (2) participated in four or

more regular season games before the end of the season immediately following the regular season in which he had become totally disabled.

In short, considering the policy as a whole, the rehabilitation clause only functions to limit coverage under the policy and cannot reasonably be read to increase Ace's exposure by doing away with the Elimination Period, a condition precedent for coverage, or the policy's meaning of the term "participate." Accordingly, Mitchell's point of error fails.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.