[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13210

_____

D.C. Docket No. 4:08-cv-00167-HL

AMERICAN FAMILY LIFE ASSURANCE
COMPANY OF COLUMBUS,

Plaintiff-Appellant,

versus

INTERVOICE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 27, 2014)

Before PRYOR and MARTIN, Circuit Judges, and Honeywell,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Charlene Edwards Honeywell, United States District Judge for the Middle District of Florida, sitting by designation.

American Family Life Assurance Company of Columbus (Aflac) entered into an agreement with Intervoice, Inc., to purchase an interactive voice response system. In this appeal, we must determine whether Intervoice has a duty under the contract to defend and indemnify Aflac for certain patent infringement claims brought by a third party. Because we agree with the district court that no such duty exists here, we affirm.

I.

Like many companies in the 21st century that handle large volumes of phone calls from customers, Aflac operates a customer call center that uses interactive voice response (IVR) technology. Gone are the days when callers would dial 1-800-99-AFLAC and wait for extended periods to be assisted by an Aflac customer service representative. Today, Aflac's calls are answered by computers that have been programmed with IVR technology. This allows customers to report their claims, pay their bills, or retrieve their policy information from Aflac's corporate mainframe—all without the hassle of dealing with a customer service representative.

In July 2000, Aflac decided to replace its obsolete IVR system with a new and improved model. To that end, Aflac solicited proposals from companies that could provide the functions and features that Aflac was looking for in a new IVR system. Eventually, Aflac signed an agreement with Intervoice in February 2001

2

to purchase and install Intervoice's IVR system at Aflac's customer call center in Columbus, Georgia.

Not long after Intervoice's IVR system was up and running, a company known as Ronald A. Katz Technology Licensing LP (RAKTL) alleged that Aflac was infringing a number of its patents.  Critically, RAKTL did not allege that Intervoice's IVR system alone infringed any of its patents.  Instead, RAKTL's infringement claims involved the interaction between the IVR system and other components of Aflac's call center not furnished by Intervoice.  These components included, among other things, Aflac's private branch exchange (which routes phone calls to the IVR), its automatic call distributor (which answers calls and keeps callers on the line), the computers which ran the IVR software, as well as Aflac's corporate mainframe which stores customer information.

After receiving RAKTL's demands, Aflac turned to Intervoice to provide a defense or indemnification under the purchase agreement.  Intervoice refused, arguing that RAKTL's claims were excluded from coverage.  Aflac then sued in Georgia state court, and Intervoice removed the case to federal court.  Following discovery, Intervoice filed a motion for summary judgment.  The district court granted the motion, finding that Aflac had no right to be indemnified under the purchase agreement.  Aflac now appeals.

II.

We review de novo the district court's grant of summary judgment, applying the same legal standards as the district court.  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1242–43 (11th Cir. 2003).  Summary judgment is appropriate if the evidence establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The evidence, and all reasonable inferences, must be viewed in the light most favorable to the non-moving party.  McCormick, 333 F.3d at 1243.

A.

At issue in this case is a provision of the purchase agreement that was titled "Patent, Copyright and Trade Secret Indemnity" (the Indemnity Provision).  The Indemnity Provision opens by stating:

> InterVoice[] will indemnify, hold harmless and defend Customer at its own expense against any claim that any System or Software as provided by InterVoice[] . . . infringes any United States copyright, patent or trade secret.

The Indemnity Provision also contains an exclusion (the Combination Exclusion), which states:

> InterVoice[] shall have no obligation with respect to any such claim of infringement based upon Customer's modification of any System or Software or their combination, operation or use with apparatus, data or computer programs not furnished by InterVoice[].

Both parties agree that the purchase agreement is to be governed by and interpreted in accordance with Texas law.  When construing a written contract

4

under Texas law, the primary concern of the court is to ascertain the true intent of the parties as expressed in the instrument.  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  If, however, the language of the contract is subject to two or more reasonable interpretations, "the contract is ambiguous, which creates a fact issue on the parties' intent." Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract.  Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994).  For an ambiguity to exist, both interpretations must be reasonable.  Id.  "While parol evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists."  Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998) (internal citation omitted).

With these principles in mind, we agree with the district court that RAKTL's patent infringement claims fall unambiguously into the Combination Exclusion. Both Aflac and Intervoice acknowledge that RAKTL's claims arise only when Intervoice's IVR system is combined with one or more components not furnished by Intervoice.  These components included, among other things, Aflac's private

5

branch exchange, its automatic call distributor, the computers that ran the IVR software, and Aflac's corporate mainframe.  In other words, RAKTL's infringement claims are not based on the theory that RAKTL is the rightful inventor of Intervoice's IVR system.  Instead, RAKTL patented many of the functions and features that were made possible once Intervoice's IVR system was hooked up with other components in Aflac's integrated call center.

The record in this case supports our conclusion that each of RAKTL's infringement claims was based upon a "combination, operation or use" of Intervoice's IVR system with other components not furnished by Intervoice.  After settling its infringement claims with Aflac, RAKTL made the following statement about its patent portfolio:

> [A] single piece of computer equipment alone that is not programmed would not infringe.  Instead, the claims of the RAKTL Patent Portfolio are generally directed to Inventions involving the interaction between telephone systems, computer systems and enabling software.

In the same way, Aflac's expert also stated that the Intervoice IVR system does not itself satisfy all of the elements of any of RAKTL's patent infringement claims.  Instead, the Intervoice IVR system is only one (albeit an important one) of the necessary elements of the claims.  We therefore conclude that Aflac has no right to indemnity under the purchase agreement because RAKTL's claims are based upon a "combination, operation or use" of Intervoice's IVR system "with apparatus, data or computer programs not furnished by InterVoice[]."

6

B.

Aflac responds with a number of reasons why we should conclude that the Combination Exemption and the Indemnity Provision as a whole are ambiguous. We find none of these reasons persuasive.

First, Aflac argues that the plain language of the Indemnity Provision is ambiguous on its face. It observes that the terms "System" and "Software" are undefined in the purchase agreement. Aflac therefore argues that the Indemnity Provision is ambiguous about the scope of coverage because it states that Intervoice will indemnify Aflac for claims that "any System or Software as provided by InterVoice[] . . . infringes any United States copyright, patent or trade secret."

We see no relevant ambiguity in these terms. To begin with, even if the purchase agreement does not contain a definition of "System or Software," neither party disputes that the Intervoice IVR system is included in any definition of those two words. More important, the purchase agreement opens with the following statement:

> [AFLAC] agrees to purchase and INTERVOICE[], agrees to sell the System and license the Software listed in Schedule "A" subject to the terms and conditions that follow.

This language tells us that the term "System or Software" refers to the individual hardware and software components that are listed in the

7

Schedules A that were appended to the purchase agreement. As a result, the Indemnity Provision is not ambiguous about the scope of coverage. Rather, the Indemnity Provision clearly protects Aflac against any claim that a third party has a copyright, patent, or trade secret over any of the items listed in the Schedules A.

Aflac next argues that the language of the Combination Exception is ambiguous about the types of claims that are excluded from coverage. Aflac admits that the Combination Exception excludes from coverage any claims relating to a "modification of any System or Software." But Aflac points out that the Exception also excludes claims relating to "their combination, operation, or use with apparatus, data or computer programs not furnished by Intervoice[]." (emphasis added). Aflac argues that the meaning of the word "their" is unclear in this context. For this reason, Aflac suggests that the purchase agreement is ambiguous with respect to the types of combinations, operations, or uses that are exempted from coverage.

We cannot agree. While it may be true that the Combination Exception was not artfully drafted, the only way to make sense of the word "their" is to say that it refers to "System or Software." As a result, we conclude that the Combination Exception unambiguously excludes from coverage: (1) modifications of any System or Software; and (2) combinations, operations, or uses of the System or

Software with apparatus, data or computer programs not furnished by Intervoice. And again, it is clear based on the record that each of RAKTL's claims were based on a "combination, operation or use" of Intervoice's IVR system with other components not furnished by Intervoice.

Third, Aflac argues that the district court's interpretation of the Combination Exemption would render the Indemnity Provision meaningless. Aflac emphasizes that the combination of Intervoice's IVR system with other components in Aflac's call center was necessary for the system to function, enabled by Intervoice's products and services, and contemplated by the parties as part of their agreement. In other words, Aflac argues that RAKTL's patent infringement claims implicate the primary purposes and functions of the IVR system. As a result, Aflac argues that the parties intended the Combination Exception to exclude only combinations that are (1) not intended as part of the purchase agreement and (2) not necessary for the IVR system to function. Anything less, according to Aflac, would mean that all indemnity protection "evaporated" once the IVR system was connected to Aflac's call center and used precisely as intended.

Aflac's argument on this front fails in at least two ways. As an initial matter, we reject Aflac's assertion that the district court's reading of the Indemnity Provision functionally deprives Aflac of any coverage at all. Under the plain language of the Indemnity Provision, Intervoice still has the obligation to

9

indemnify Aflac for any claims that Intervoice's IVR system <u>on its own</u> infringes the patents of a third party. Indeed, one could certainly imagine a situation where one of Intervoice's competitors sues Aflac, arguing that it is the inventor of Intervoice's IVR system. In this hypothetical, Intervoice admits that it would be obliged to provide coverage.

Beyond that, the Combination Exclusion exempts from coverage only those combinations that involve components not "furnished by InterVoice[]." This means that Intervoice would still have a duty to defend Aflac against claims relating to combinations between products that were exclusively furnished by Intervoice. As a result, Aflac is wrong to assert that any indemnity protection in the contract "evaporated" once Intervoice's IVR system was connected to the other components of Aflac's call center.

Finally, Aflac argues that Intervoice's knowledge and conduct during negotiations of the purchase agreement demonstrate that the parties contemplated indemnification in this situation. According to Aflac, Intervoice had received— and ignored—dozens of complaints from its customers regarding RAKTL, but it nevertheless led Aflac to believe that the Indemnity Provision would provide protection against RAKTL's infringement claims.

Aflac's last argument is a non-starter under Texas law. Because this is an unambiguous contract with an integration clause, extrinsic evidence of contract

10

negotiations are completely beside the point.  See Nat'l Union Fire Ins. Co., 907 S.W.2d at 520 ("Parol evidence is not admissible for the purpose of creating an ambiguity.").  In any event, it is significant that Intervoice never promised to Aflac during contract negotiation that claims by RAKTL would be covered.  Instead, Intervoice pointed to the purchase agreement and stated that if the Indemnity Provision "doesn't meet your needs, then we can have our attorneys discuss it."  Instead of bargaining for different language, however, Aflac entered into the contract containing this provision.  We are therefore not persuaded by Aflac's attempts to introduce ambiguity into this purchase agreement, where the plain language of the contract clearly and definitively resolves this dispute.

### III.

We cannot accept Aflac's invitation to rewrite the purchase agreement to reach a result we believe is more just.  We simply have no power to rewrite the contract or add to its language under the guise of interpretation.  See Natural Gas Clearinghouse v. Midgard Energy Co., 113 S.W.3d 400, 407 (Tex. App. 2003) ("For a court to change the parties' agreement merely because it did not like the contract, or because one of the parties subsequently found it distasteful, would be to undermine not only the sanctity afforded the instrument but also the expectations of those who created and relied upon it.").

For these reasons, the district court's grant of summary judgment to Intervoice is **AFFIRMED.**