SOUTHWICK, P.J.,
for the Court.
¶ 1. Eddie Mae Trotter filed suit against her employer’s insurance company for bad faith failure to pay her claim. Trotter appeals the trial court’s grant of summary judgment in favor of the insurance company. There is no issue of material fact and no mistake of law. We affirm.
¶ 2. Trotter was employed as a nurse for Riley Home Health Services. In the course and scope of employment, Trotter was involved in a car accident with an uninsured motorist in her personal vehicle on May 30, 1997. In the employment agreement, Riley required that Trotter have her own automobile insurance. Trotter had purchased a policy from Atlanta Casualty Insurance Company, but it had lapsed by the time of the accident. Trotter’s claim for uninsured motorist coverage was denied by Riley’s insurance company, Federal Insurance Company. Trotter sued Federal claiming that the company had acted in bad faith in denying the claim. Also named in the suit was Meyer & Rosenbaum, Inc., the insurance agency that assisted Riley in obtaining the Federal policy.
¶ 3. The record of this case contains approximately 2000 pages of documents. Federal filed for summary judgment on the basis that Trotter did not qualify as an insured under the uninsured motorist section of Riley’s policy. Meyer & Rosen-baum filed a similar motion. The trial court granted both motions. Trotter appeals claiming that she was an insured under the policy and her vehicle was a covered auto, or in the alternative she should have been allowed to conduct more discovery before the motion for summary judgment was granted.
DISCUSSION

1. Uninsured motorist coverage

¶ 4. The issue in this case is whether Trotter is entitled to uninsured motorist coverage under the policy issued to Riley by Federal. This form of coverage is addressed by statute:
No automobile liability insurance policy or contract shall be issued or delivered ... unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for property damage from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law.... The coverage herein required shall not be *414 applicable where any insured named in the policy shall reject the coverage in writing and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in any renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.
Miss.Code Ann. § 83-11-101(2) (Rev.1999).
¶ 5. This statute states that this form of coverage exists unless any insured named in the policy rejects the coverage in writing. The Supreme Court has noted that the legislature created uninsured motorist coverage in 1956 because of the growth in the number of uninsured drivers. Glennon v. State Farm Mut. Auto. Ins. Co., 812 So.2d 927, 930 (Miss.2002). Later, the Mississippi Uninsured Motorist Act was enacted to require such coverage in all insurance policies unless the coverage was specifically rejected by the insured in writing. Id.; Miss.Code Ann. §§ 83-11-101 to -111 (Rev.1999). Whether an employee’s claims against an uninsured motorist are covered by the issued policy, and if not, whether the coverage was properly rejected, are the issues that face us.

2. Riley’s contract with Federal

¶ 6. Contract interpretation is a mixed question of law and fact. When there is no ambiguity in a contract, the court decides its meaning as a matter of law. Miss. Transp. Comm’n v. Ronald Adams Contractor, Inc., 753 So.2d 1077, 1088 (Miss.2000). In these instances, “the contract must be enforced as written.” Id. If the contract is determined to be ambiguous, then the question of the meaning of its terms usually should be submitted to a jury. Clark v. State Farm Mut. Auto. Ins. Co., 725 So.2d 779, 781 (Miss.1998).
¶ 7. The trial court found that the contract was unambiguous. The court held that the only coverage that Riley had acquired for claims created by uninsured motorists was applicable to the vehicles that Riley owned. Trotter was driving her own vehicle when the accident occurred.
¶ 8. Two different types of coverage have been highlighted in the case. Even though the policy terms regarding uninsured motorist claims are directly applicable, Trotter also discusses the liability coverage and argues that the language in that section affects her claim for uninsured motorist protection. We will analyze both sections of the policy.
¶ 9. In the policy that was in effect at the time of this accident, a separate endorsement appeared regarding the uninsured motorist provisions. In this endorsement, coverage was provided to an “insured” for compensatory damages caused by the owner or driver of an uninsured motor vehicle. An “insured” was defined as the named insured, Riley, and anyone occupying a covered automobile. The policy identified the vehicles that were “covered” for purposes of each type of coverage. For uninsured motorist coverage, the policy provided that automobiles that Riley owned were the only ones that were covered.
¶ 10. Therefore, under the plain terms of the insurance contract, injuries suffered by an employee when driving her own vehicle would not be covered by the uninsured motorist provisions of her employer Riley’s policy. The trial court was correct that these terms were not ambiguous.
¶ 11. Trotter argues in the alternative that a separate endorsement to the policy redefined who was an insured for liability purposes, and that the result of that was to make all employees insured for uninsured motorist purposes unless they rejected coverage in writing. An endorsement entitled “Employees as Insureds” said that *415 the “following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision: any employee of yours is an ‘insured’ while using a covered ‘auto’ you don’t own, hire or borrow in your business or personal affairs.” This was doubtless a business decision to have coverage to protect Riley in case an employee caused injuries to others.
¶ 12. Trotter seeks to transform that provision, which protects Riley and the employees from liability claims, into one that protects employees from the risks of collisions with uninsured motorists. The argument is that this provision redefined the category of “insured” for present purposes. Of course, under the plain language of the endorsement, it altered the definition solely for liability purposes. Liability is a different type of coverage than uninsured motorist coverage. No issue is presented to us of Trotter or Riley’s liability for damages to the other driver. The issue Trotter makes actually concerns whether identifying an employee as an insured for any purpose then requires that the employee reject uninsured motorist coverage in writing. We consider that point in the subsequent section that addresses the issue of rejecting coverage.
¶ 13. This policy’s coverage for uninsured motorists was limited to accidents occurring in vehicles owned by Riley. The policy was a typical insurance contract, with its somewhat complicated language that must be examined with some care in order to determine its effect. Complicated language does not equate to ambiguity for purposes of permitting exploration of factual issues to address that ambiguity. We will discuss in the final issue whether additional discovery was needed in order to ferret out facts to clarify ambiguity. Absent ambiguity, further discovery was not needed.
¶ 14. The policy’s plain language did not extend coverage to an employee who was driving her own vehicle, for injuries caused by an uninsured motorist.

S. Rejection of uninsured, motorist coverage

¶ 15. Trotter argues that coverage for her claims existed because she did not sign a waiver. In the statute that we have already quoted, uninsured motorist coverage will not exist “where any insured named in the policy shall reject the coverage in writing....” Miss.Code Ann. § 83-11-101(2) (Rev.1999). This means that a writing is necessary to reject or to limit the statutorily-defined basic uninsured motorist coverage. There was a writing by which Riley’s agent at Riley’s direction limited coverage. Trotter’s argument is that this is not enough.
¶ 16. A preliminary issue made by Trotter is that a form for waiver of uninsured motorist coverage appears with the documents regarding this policy, and it was never signed. That one-page form provides two options for rejecting coverage: (1) refuse any uninsured motorist coverage in the policy, or (2) refuse the property damage portion of the coverage but retain the remainder. Neither of those options applies to Riley’s decision to maintain full uninsured motorist coverage for its own vehicles. That form could not be executed consistently with what Riley was acquiring.
¶ 17. Riley made a written request to limit its uninsured motorist coverage. It used the Meyer & Rosenbaum insurance agency to make its written application. We find no defect when a business or individual employs an agent to perform the acts that are necessary for effectively limiting uninsured motorist coverage. Here, too, the application is somewhat involved and codes are used to indicate what kind of *416 coverage is wanted in various categories. There is complication but no ambiguity in sorting out that Riley requested coverage for damages caused by uninsured motorists only to accidents involving a Riley vehicle and not those, such as here, involving employee vehicles.
¶ 18. The central argument that Trotter makes to convince us that the requirements for waiving uninsured motorist coverage were not met is that until she signs a rejection of coverage on her employer’s policy, she cannot effectively be denied the coverage. Trotter alleges that as an insured for liability purposes, she must have uninsured motorist coverage unless she waives it in writing.
¶ 19. We look to the statute for an answer to this question. The Riley policy never rejected uninsured motorists coverage, but it limited the protection to those vehicles Riley owned. There was a written application for limited coverage made by the insured through its agent. The fact that the written application limited and did not reject coverage does not create a defect. We interpret the statutory right to reject coverage in writing to encompass the lesser act of limiting that coverage. This is sufficient insofar as Riley himself and his business are concerned. Insofar as whether the statute then requires each employee to reject the coverage, we examine the relevant language:
The coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in any renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.
Miss.Code Ann. § 83-11-101(2) (Rev.1999) (emphasis added). The named insured, who was Riley, certainly qualifies as “any insured named in the policy....” We do not interpret the statute to mean that “any insured” may only reject the coverage for itself.
¶20. For example, if a parent applies for a policy to cover the entire family, that applicant’s rejection of uninsured motorist coverage is enough. There are not multiple applications or signatures needed for the same policy. If instead it is a business entity that seeks to limit its policy, there are at least impracticalities of requiring each employee also to sign. Coverage is rejected when “any insured named in the policy” does so in writing. Further, only those present at the time the original policy was enacted would be available to sign that documentation. By statute, subsequent renewals do not require a new waiver: “such coverage need not be provided in any renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.” Id. Trotter in this case was an employee at the time that the original policy was issued. But it makes little sense as a matter of statutory language, of fair notice to employees, or for other reasons, to require those employees present at the time that a company acquires a policy to waive uninsured motorist coverage, but then not to require later employees to do so. No employee needs to waive or limit uninsured motorist coverage if the company itself does so in writing, either through a document that it signs or one signed by a properly authorized agent.
¶ 21. We find that the Supreme Court has already implicitly agreed with this position. In a recent precedent, an employee sued for coverage of her injuries in an automobile accident with an uninsured motorist. Travelers Prop. Cas. Corp. v. *417 Stokes, 838 So.2d 270, 271 (Miss.2003). The employer had waived uninsured motorists coverage in its policy, but the waiver form could not be found. Id. at 272. The only issue in the case was whether the company had in fact waived the coverage even though the actual document could not be produced. Id. at 274. The Court found that the employer’s waiver could be proven even without the signed waiver form being found.
¶22. Most importantly for our purposes, there was no issue made by the parties nor noted by the Court that the employee who was suing must have individually waived coverage under the employer’s policy. The Court simply found that uninsured motorist coverage had been waived for the employee when the employer itself in acquiring the policy waived the coverage. Id.
¶23. We acknowledge that the issue might have been overlooked by the parties. There is no explicit holding on the point in Stokes. Overlooking that issue does not appear particularly likely. Moreover, independently of Stokes, we have already indicated that we find no basis on which to require every employee to sign an uninsured motorists waiver form before a limitation applies.
¶24. When an insured named in the policy, as Riley was, puts in writing the limits on uninsured motorist coverage that it wants, this satisfies the statute. Riley informed its employees of the need to obtain their own insurance. There were no surprises. The limits on uninsured motorist coverage solely to vehicles that Riley owned was properly requested in writing and is therefore effective.
A Denial of Trotter’s Rule 56(f) motion
¶ 25. Finally, Trotter argues that additional discovery was needed prior to a ruling on the defense motion for summary judgment. Trotter had filed a motion under the Mississippi Rules of Civil Procedure 56(f) so that she could depose additional witnesses. The trial court denied that motion and granted both Federal and Meyer’s motions for summary judgment.
¶ 26. Rule 56(f) is premised on the reality that completion of needed discovery may aid the court in its determination of whether there is a genuine issue of material fact. This is not the situation here. Since the contract between Riley and Federal was unambiguous, there was no factual issue. Therefore, there is no need to conduct additional discovery to reach this conclusion.
¶ 27. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.