Opinion issued September 9, 2004












In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-01157-CV
____________

DEBRA NAVARRO-MARTHA, Appellant

V.

AMERICAN HOME ASSURANCE CO., Appellee




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2001-20443




MEMORANDUM OPINION
          Appellant, Debra Navarro-Martha (“Debra”), appeals a take-nothing judgment
rendered upon cross-motions for summary judgment. We determine whether certain
endorsements within the business automobile policy of Debra’s husband’s employer
made Debra, when not riding in a covered automobile and when on an excursion
unrelated to her husband’s work, an insured for purposes of that policy’s uninsured
and underinsured motorist (“UM/UIM”) endorsement. We affirm.
Background
          On the date of the accident on which this suit is based, Debra was married to
Vince Martha (“Vince”). Vince was an operations manager for NES Companies d/b/a
Genpower Pump and Equipment. The company by whom Vince was employed was
one in which National Equipment Services, Inc. (“NES”) had an ownership interest. 
NES had a Texas standard business automobile policy (“the policy”) with American
Home Assurance Company (“American”). The policy listed as named insureds NES
and certain of its affiliated business entities, including Vince’s employer, but no
individuals. The policy’s declarations page listed “any auto” in the column for
“covered auto[s]” for liability coverage, and it listed the UM/UIM endorsement
number in the column for “covered auto[s]” for UM/UIM coverage. The policy also
contained an endorsement for UM/UIM coverage and separate “Employees As
Insureds” (“EAI”) and “Drive Other Car–Broadened Coverage for Named
Individuals” (“DOC”) endorsements for liability coverage. Vince possessed a
company vehicle that was a covered automobile under the policy.
 
          On January 5, 2001, Debra was riding as a passenger in a car owned and driven
by Jeff Fulkerson. The car was involved in a one-car accident in which Debra was
injured. Fulkerson’s car was not a covered automobile for any coverage afforded by
the policy. Fulkerson’s car was instead covered by a different carrier and had a
$25,000 policy limit for liability coverage. Neither Fulkerson nor Debra was an
employee of or was furthering the business of any named insured under the policy on
the night of the accident. Vince was not involved in the accident and was not driving,
occupying, or otherwise using Fulkerson’s car at the time.
          According to Debra’s petition, the accident caused her to incur far more than
$25,000 in medical expenses. Fulkerson testified by affidavit that he accepted full
responsibility for the accident and Debra’s resulting injuries. Debra made a claim for
UM/UIM coverage under the policy,


 but American denied coverage. Debra sued
Fulkerson for negligence and sued American for UM/UIM coverage under the policy
and for various violations of the Insurance Code. Debra settled with Fulkerson in
exchange for the full policy liability limits of $25,000.
          American moved for summary judgment on the ground that Debra’s claims
failed because she was not an insured entitled to UM/UIM coverage under the policy. 
Debra moved for partial summary judgment on the ground that she was entitled to
UM/UIM coverage. Without specifying grounds, the trial court granted American’s
motion, denied Debra’s motion, rendered a take-nothing judgment on Debra’s claims
against American, and dismissed with prejudice Debra’s claim against Fulkerson.
Standard of Review
          Traditional summary judgment under rule 166a(c) is proper only when a
movant establishes that there is no genuine issue of material fact and that he is
entitled to judgment as a matter of law. Randall’s Food Mkts., Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to a traditional summary
judgment if the evidence disproves as a matter of law at least one element of each of
the plaintiff’s causes of action or if the evidence conclusively establishes all elements
of an affirmative defense. Id. When a plaintiff moves for traditional summary
judgment on its own claims for affirmative relief, the plaintiff has the burden of
proving conclusively each element of its causes of action. MMP, Ltd. v. Jones, 710
S.W.2d 59, 60 (Tex. 1986). The plaintiff carries this burden if it produces evidence
that would suffice to support an instructed verdict at trial on its claims for affirmative
relief. Ortega-Carter v. Am. Int’l Adjustment Co., 834 S.W.2d 439, 441 (Tex.
App.—Dallas 1992, writ denied). We indulge every reasonable inference in favor of
the non-movant, resolve any doubts in its favor, and take as true all evidence
favorable to it. Randall’s Food Mkts., 891 S.W.2d at 644; Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.).
          When both sides move for summary judgment and the trial court grants one
motion and denies the other, we can consider both motions, their evidence, and their
issues and may render the judgment that the trial court should have rendered. Holy
Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001); CU Lloyd’s
of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998). When an order granting
summary judgment does not specify the grounds upon which the trial court ruled, we
must affirm to the extent that any of the summary judgment grounds is meritorious. 
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).
Rules of Construction and Burdens of Proof
Applicable to Insurance Contracts and Disputes

          We construe an insurance contract we do as any other contract. Balandran v.
Safeco Ins. Co. of Am., 972 S.W.2d 738, 740-41 (Tex. 1998). Our primary goal is to
effectuate the written expression of the parties’ intent. Id. at 741. We read the
contract as a whole, striving to give every part meaning and effect. Id. The Supreme
Court has recently explained that, “[i]n cases . . . where the policy forms are mandated
by a state regulatory agency, the actual intent of the parties is not material. 
. . . [W]hen construing such policies, we look to determine the ordinary, everyday
meaning of the words to the general public. . . . ‘A true search for what the courts
usually speak of as the intent of the parties will not be an inquiry as to what the words
. . . meant to this particular insurer or insured. It is, first, an effort to determine the
ordinary lay meaning of the words to the general public, and, in light of this meaning,
it is, second, an examination of the choice the purchaser had and the choice he
made.’” Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 551-52 (Tex.
2003) (quoting United States Ins. Co. of Waco v. Boyer, 269 S.W.2d 340, 341 (Tex.
1954)).
          A contract is unambiguous when, after applying construction rules, we
conclude that it can be given a definite legal meaning. Nat’l Union Fire Ins. Co. of
Pittsburgh, PA v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). When the
contract is unambiguous, we give effect to its plain language. Perrotta v. Farmers
Ins. Exch., 47 S.W.3d 569, 574 (Tex. App.—Houston [1st Dist.] 2001, no pet.). 
Ambiguity is a question of law. CBI Indus., Inc., 907 S.W.2d at 520. A contract is
ambiguous when, after applying construction rules, we conclude that it could have
two or more reasonable interpretations. Balandran, 972 S.W.2d at 741. We may
consider parol evidence of the parties’ interpretation only if the contract is
ambiguous. CBI Indus., Inc., 907 S.W.2d at 520. If the contract is ambiguous, we
must adopt the construction most favorable to the insured. Nat’l Union Fire Ins. Co.
of Pittsburgh, PA v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991).
          In an insurance dispute, the claimant has the initial burden to establish that his
claim comes within the scope of coverage provided by the policy. Comsys Info. Tech.
Servs., Inc. v. Twin City Fire Ins. Co., 130 S.W.3d 181, 188 (Tex. App.—Houston
[14th Dist.] 2003, pet. granted); Evergreen Nat’l Indem. Co. v. Tan It All, Inc., 111
S.W.3d 669, 675 (Tex. App.—Austin 2003, no pet.). In contrast, the insurer has the
burden to prove that a claim comes within a policy exclusion or limitation of
coverage. Tex. Ins. Code Ann. art. 21.58(b) (Vernon Supp. 2004-2005); Tan It All,
111 S.W.3d at 675. Whether Debra was an insured under the UM/UIM endorsement
is a question of the existence of coverage, rather than of an exclusion, limitation, or
exception to coverage; accordingly, Debra had the burden of proof.


 See Comsys
Info. Tech. Servs., 130 S.W.3d at 188; Tan It All, 111 S.W.3d at 675.
 
 
Coverage
A.      The UM/UIM Endorsement
          The policy contains the standard Texas UM/UIM endorsement, which provided
in pertinent part as follows:
A.COVERAGE
 
We will pay damages which an insured is legally entitled to recover
from the owner or operator of an uninsured motor vehicle because of
bodily injury sustained by an insured . . . .
 
. . .
 
C.WHO IS AN INSURED
 
1.You and any designated person and any family member
of either.
 
2.Any other person occupying a covered auto.
 
3.Any person or organization for damages that person or
organization is entitled to recover because of bodily injury
sustained by a person described in 1. or 2. above.
 
. . .
 
F.ADDITIONAL DEFINITIONS
 
The following are added to the DEFINITIONS Section and have special
meaning for UNINSURED/UNDERINSURED MOTORISTS
INSURANCE:
 
1.“Family member” means a person related to you by
blood, marriage or adoption who is a resident of your
household, including a ward or a foster child.
 
2.“Designated person” means an individual named in the
schedule. By such designation, that person has the same
coverage as you. . . .
 
4.“Covered Auto” means an auto:
 
a.owned or leased by you or
 
b.while temporarily used as a substitute for an owned
covered auto that has been withdrawn from normal
use because of its breakdown, repair, servicing, loss
or destruction.
 
Liability coverage of this policy must apply to the covered auto. 
Covered auto includes autos . . . for which Personal Injury
Protection coverage has not been rejected in writing.

(Emphasis in original.) Under a heading labeled “Schedule” within the UM/UIM
endorsement appeared a blank for “Designated Person.” The parties left that space
blank.
          The policy defined “you” and “your” throughout the policy as “the Named
Insured shown in the Declarations,” which listed only NES. See Old Am. County
Mut. Fire Ins. Co. v. Sanchez, 81 S.W.3d 452, 459 (Tex. App.—Austin 2002, pet.
granted) (noting that term “named insured” is term of art referring to insured listed
on declarations page of insurance policy). The policy contained an endorsement
expanding the definition of named insured to include certain subsidiaries and
acquired companies affiliated with NES. That named-insured endorsement did not
list Vince, Debra, any other individuals, or any category of individuals as named
insureds.
B.      Debra’s Problem
          The problem facing Debra is that the Texas Supreme Court has already held
that, under the unambiguous language of this UM/UIM endorsement to a business
automobile policy, one in Debra’s situation does not enjoy coverage for injuries
sustained in an accident involving a non-covered vehicle that is being used for
personal purposes. In Grain Dealers Mutual Insurance Co. v. McKee, the supreme
court considered a claim for UM/UIM coverage under the exact policy language at
issue here. See 943 S.W.2d 455 (Tex. 1997). The named insured under the business
automobile policy in Grain Dealers was a corporation, Future Investments, of which
Gerald McKee was the president and (the court assumed for purposes of its opinion)
the sole shareholder. Id. at 456. McKee’s minor daughter, Kelly, was injured in a
one-car accident while riding as a passenger in a car that was driven by her step-sister
and owned by the step-sister’s husband. Id. The parties stipulated that neither the
driver nor the car was covered under Future Investments’s policy and that the
accident occurred during a drive that was unrelated to any of Future Investments’s
business purposes. Id. 
          McKee sought coverage for Kelly’s personal injuries under the UM/UIM
endorsement to Future Investment’s policy. Id. The supreme court held that there
was no UM/UIM coverage for Kelly:
           In order for the policy to cover Kelly, she must fall within one of
the categories of “who is an insured.” The Business Auto Coverage
Form of the . . . policy provides: “Throughout this policy the words
‘you’ and ‘your’ refer to the Named Insured in the Declarations page.” 
The declarations page of the . . . policy provides that Future Investments
is the “named insured.” Future Investments is also the “named insured”
in the UM/UIM and PIP endorsements. The UM/UIM endorsement
defines “designated person” as “an individual named in the schedule. 
By such designation, that person has the same coverage as you.” Future
Investments did not name a “designated person” in the space provided
in the UM/UIM endorsement and did not list additional autos to be
covered under either endorsement. The names of Gerald McKee and
Kelly McKee do not appear anywhere in the policy or the endorsements.
As a result, Kelly does not qualify as “you” or “designated person”
under the endorsements.
 
Additionally, Kelly does not qualify as a “family member” under
the endorsements. “Family member” is defined in both endorsements as
“a person related to you [Future Investments] by blood, marriage, or
adoption who is a resident of your [Future Investments’s] household,
including a ward or foster child.” Kelly is obviously not related to
Future Investments by blood, marriage, or adoption. Of course, she also
does not reside in Future Investments’ household. A corporation simply
cannot have a “family” as that term is defined in the policy.

Id. at 457; see also Webster v. U.S. Fire Ins. Co., 882 S.W.2d 569, 571-73 (Tex.
App.—Houston [1st Dist.] 1994, writ denied) (reaching similar holding on policy
language like that considered in Grain Dealers and in instant case, although Websters
conceded that they did not fall within UM/UIM “designated persons” category). The
court then held that, because Kelly did not fit into the other two definitions of an
insured under the UM/UIM endorsement—by having occupied a covered vehicle, for
example—she was not entitled to UM/UIM benefits under the business policy. Id. 
at 457. Siding with the majority of courts in other jurisdictions, the Grain Dealers
court rejected arguments that the combination of the “family member” language in
the UM/UIM endorsement’s definition and a business entity’s being designated as the
named insured made the policy ambiguous. See id. at 459.
          The “Who Is An Insured” language of the UM/UIM endorsement, as well as
the defining of “you” as the named insured, are the same in this case as they were in
Grain Dealers.


 See id. at 456-57. In its summary judgment motion, consistent with
the Grain Dealers court’s holding, American argued that Debra was not entitled to
UM/UIM coverage because (1) she was not a named insured and could not be the
family member of a named insured, (2) no one was listed as a “designated person” in
the UM/UIM endorsement, and (3) Debra was not occupying a covered vehicle when
the accident occurred.
 
          The UM/UIM endorsement provided coverage for the named insureds: NES
(listed on the declarations page) and certain of its affiliated companies (added through
a named-insured endorsement). NES could have added Vince or anyone else to the
named-insured endorsement, but did not. No one disputes that Vince was not a
named insured. Additionally, no individual could have been a “family member” of a
named insured because none of the named insureds was an individual and because
business entities cannot have a family. See Grain Dealers, 943 S.W.2d at 457, 459;
Webster, 882 S.W.2d at 572-73.
          Neither were Vince or Debra “designated person[s]” within the meaning of the
UM/UIM endorsement. The UM/UIM endorsement defined a “designated person”
as “an individual named in the schedule.” (Emphasis added.) The endorsement did
not say “any” schedule or “a” schedule. The term “the schedule” thus referred back
to an earlier section within the endorsement itself, entitled “SCHEDULE.” See Grain
Dealers, 943 S.W.2d at 457 (looking first to the space provided within the UM/UIM
endorsement itself for designated persons to determine whether any person was
designated as an UM/UIM insured). Under the endorsement’s section entitled
“SCHEDULE,” there is a blank for “Designated Person.” That blank was not filled
in with anything. Therefore, no one was designated as a “designated person” for
purposes of the UM/UIM endorsement. See id.
          Debra alternatively argues that a separate spreadsheet of NES vehicles and their
drivers (including Vince)—dated August 9, 2000 (before the policy’s issuance),
apparently generated by NES, not on file with American, not attached to the policy,
and not referred to in the UM/UIM endorsement—constituted a “schedule” of
designated persons for purposes of UM/UIM coverage. Again, the UM/UIM
endorsement’s “designated person” blank was not filled in with a notation indicating
that a list of designated persons was to be found in a separate schedule of any kind. 
No summary judgment evidence indicates that the UM/UIM endorsement at any
pertinent time incorporated or even referred to a separate schedule. It is thus
immaterial whether Vince was listed on a separate schedule: the UM/UIM
endorsement unambiguously did not define “designated person” in terms of any such
schedule.



          Finally, the parties stipulated that Debra’s sole basis for claiming UM/UIM
coverage was the first definition of an UM/UIM insured and that Debra was not
injured in “a covered auto for any coverage afforded by” the policy.



          The trial court would thus not have erred in granting American’s motion and
in denying Debra’s for these reasons. See Grain Dealers, 943 S.W.2d at 457.
C.      Debra’s Proposed Solution
          Apparently to avoid the effect of Grain Dealers, Debra argues that three of the
policy’s other liability endorsements, when read together with the UM/UIM
endorsement, made her (by virtue of her being Vince’s wife) an insured for purposes
of UM/UIM coverage. She argues that each of these three endorsements, which
extended liability coverage to certain individuals, required that UM/UIM coverage
also be extended to those individuals and their family members. She distinguishes
Grain Dealers because, in it, the court recognized that neither Kelly nor McKee had
any liability coverage under the policy, whereas, here, various endorsements allegedly
extended liability coverage to Vince or to Vince and Debra. See id. We examine
each of these endorsements, and Debra’s arguments concerning them, below.
 
          1.       The Additional-Insured Endorsement
          In issue one, Debra argues that the trial court erred in granting American’s
summary judgment motion, and in denying her motion for partial summary judgment,



because Vince, by virtue of his oral employment agreement with NES, was an insured
under an additional-insured endorsement for purposes of liability coverage. Debra
argues that Vince’s being an additional insured, and his thus being entitled to liability
coverage, necessarily also entitled him to UM/UIM coverage. Debra then argues that,
because the UM/UIM endorsement defined an insured to include a family member of
one entitled to UM/UIM coverage, she, as Vince’s wife, was also an insured for
UM/UIM coverage.
          Debra waived this argument by not having raised it in her summary judgment
response or in her own motion for partial summary judgment. See McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 341, 343 (Tex. 1993) (requiring that
movant present summary judgment grounds in motion and that non-movant present
issues defeating summary judgment in answer or response, with sole exception’s
being that non-movant may always argue on appeal that movant’s grounds were
legally insufficient to support summary judgment); cf. Kelley-Coppedge, Inc. v.
Highlands Ins. Co., 980 S.W.2d 462, 467 (Tex. 1998) (holding that insurer waived
reliance on policy exclusion for not having moved for summary judgment on ground
that that exclusion precluded recovery). That Debra would not mention the
additional-insured endorsement in her summary judgment pleadings is not surprising,
given that her “live” petition, which set out the two other endorsements that she
claimed entitled her UM/UIM coverage, did not even mention the additional-insured
endorsement.



          Debra responds with four arguments to show that she did not waive this issue. 
First, she argues that she put “the entire policy into issue” simply by arguing, in her
summary judgment response and motion for partial summary judgment, that Vince
(and thus she, as Vince’s spouse) was an insured under the terms of the UM/UIM
endorsement. We disagree. An argument that the UM/UIM endorsement’s terms
entitled Debra to benefits preserved an argument concerning the UM/UIM
endorsement’s terms themselves. That same argument did not, by itself, preserve
arguments that other endorsements, when read together with the UM/UIM
endorsement, provided Debra coverage as an UM/UIM insured. Debra’s new
argument concerning the interplay between the additional-insured endorsement and
the UM/UIM endorsement falls into this latter category. The argument thus had to
be raised to be preserved. See McConnell, 858 S.W.2d at 341, 343.
          Second, Debra argues that the rule of construction requiring courts to interpret
policy language in the context of the entire policy also put the entire policy at issue,
so that she could rely on any policy provisions on appeal. See Phillips Petroleum Co.
v. St. Paul Fire & Marine Ins. Co., 113 S.W.3d 37, 40 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied) (noting that, in interpreting insurance contract, court “must
attempt to give effect to all contract provisions” and must “construe the terms of the
contract as a whole and consider all of its terms, not in isolation, but within the
context of the contract.”). A rule of judicial construction has nothing to do with the
parties’ burden to present summary judgment arguments and grounds to the trial
court, however.
          Third, Debra argues that, to the extent that it was the movant, American had to
show as a matter of law that none of the policy’s endorsements afforded Debra any
coverage. However, Debra had pleaded that she had UM/UIM coverage only because
the EAI and DOC endorsements made her husband (and thus her) an insured. The
policy contained at least 13 endorsements that Debra did not mention in her
pleadings. American was entitled to rely on the policy provisions that Debra had
expressly pleaded provided her coverage in determining what summary judgment
grounds to assert and did not have to attack or to address every remaining, unpleaded
endorsement in the policy.
          Fourth, Debra argues that American “waived any objection that the [additional-insured-endorsement] grounds were not expressly presented to the trial court because
there were no special exceptions filed in response” to Debra’s motion for partial
summary judgment. Debra’s motion for partial summary judgment raised certain
grounds, but did not raise the additional-insured-endorsement ground that she asserts
on appeal. In this situation, American did not have to specially except to Debra’s
motion. See McConnell, 858 S.W.2d at 342 (“When the motion for summary
judgment clearly presents certain grounds but not others, a non-movant is not
required to except.”).
          Accordingly, we hold that Debra waived issue one. We overrule the issue.
2.The EAI Endorsement
          In issue two, Debra argues that the trial court erred in rendering summary
judgment for American, and in denying her motion for partial summary judgment,
because the policy’s EAI endorsement—which made NES’s employees insureds for
liability coverage when driving covered automobiles not owned, hired, or borrowed
by NES in its business—also allegedly made Vince (and thus her) an insured for
purposes of UM/UIM coverage.
          In its summary judgment motion, American asserted that (1) the EAI
endorsement extended only liability coverage, not UM/UIM coverage, to NES’s
employees; (2) the two endorsements did not refer to each other and could not be read
together; (3) the EAI endorsement did not extend even liability coverage to spouses;
and (4) Fulkerson’s vehicle was not a covered automobile for liability or any other
coverage. 
          Debra first responds that the EAI endorsement, which necessarily included
Vince, was tantamount to a designation of Vince as a “designated person” for
purposes of the UM/UIM endorsement. Because the UM/UIM endorsement provided
for coverage for the family member of a designated person, Debra argues that she was
also covered. We disagree. As we have already noted, the “designated person” blank
on the UM/UIM schedule was not filled in, either with a person’s name, with a
statement such as “per schedule on file with company” (language that the policy did
use to designate covered individuals elsewhere), or with a reference to any other
provisions of or endorsements to the policy. Nowhere did the UM/UIM endorsement
state that every person covered for liability purposes under any other endorsement
was also an UM/UIM “designated person.” Simply put, the two endorsements did not
refer to each other, and one endorsement cannot be used to fill in blanks in the other
when both provide for totally different coverages.


 Cf. Progressive County Mut. Ins.
Co. v. Carway, 951 S.W.2d 108, 116 (Tex. App.—Houston [14th Dist.] 1997, pet.
denied) (declining to hold that parties intended to change definition of insured for
liability coverage—which did not include insured’s employee as insured, by name or
otherwise—by having purchased PIP and UM/UIM endorsements, which contained
broader and more favorable definitions of insured).
          Second, we note that the express terms of the EAI endorsement modified the
definition of an insured for purposes of liability coverage only. Liability coverage
is not UM/UIM coverage. See Trotter v. Fed. Ins. Co., 865 So. 2d 411, 415 (Miss.
Ct. App. 2004) (“Liability is a different type of coverage than uninsured motorist
coverage.”). Nonetheless, Debra argues that UM/UIM coverage “follows the liability
coverage” and thus “follows the insured” as a matter of law, meaning that anyone
insured in any way for liability coverage coextensively enjoys UM/UIM coverage by
operation of law. She bases this argument on the language in the UM/UIM
statute—Insurance Code article 5.06-1(a)—that UM/UIM coverage be provided for
“persons insured thereunder,” i.e., under “liability insurance . . . covering liability
arising out of ownership, maintenance, or use of any motor vehicle . . . .” See Tex.
Ins. Code Ann. art. 5.06-1(1) (Vernon Supp. 2004-2005).


 Without clearly saying
so, Debra is effectively arguing that, by virtue of the statute, Vince would have been
entitled to UM/UIM coverage for the accident even though he did not fall within any
of the three definitions of an UM/UIM insured. Debra argues that, because Vince
would allegedly have had UM/UIM coverage had he been in the accident, she also
has UM/UIM coverage.
          We disagree. For purposes of argument only, and without deciding whether
Debra’s premise is correct, we accept her premise that UM/UIM coverage extends,
as a matter of law, to those individuals to whom the EAI endorsement extends
liability coverage.


 Even with our accepting Debra’s premise, however, the policy
does not extend UM/UIM coverage to Debra. First, the EAI endorsement does not
extend liability coverage to spouses of employees, but only to employees. 
Accordingly, even if the EAI liability endorsement’s existence could somehow extend
UM/UIM coverage, it could not extend that coverage to employees’ spouses—here,
Debra. Second, the EAI endorsement provides an employee with liability coverage
only “while using a covered auto you [the named insureds] don’t own, hire or borrow
in your business or your personal affairs.” The parties stipulated that Fulkerson’s car
was not a covered automobile for any coverage afforded by the policy.
          Accordingly, we hold that the trial court did not err in rendering summary
judgment for American, and in denying summary judgment for Debra, because the
unambiguous language of the UM/UIM and the EAI endorsements did not provide
Debra with UM/UIM coverage under these circumstances. We thus overrule issue
two.
 
          3.       The DOC Endorsement
          In issue three, Debra argues that the trial court erred in rendering summary
judgment for American, and in denying her motion for partial summary judgment,
because the policy’s DOC endorsement—which extended liability coverage to certain
vehicles not owned, hired, or borrowed by NES when driven by individuals named
in the endorsement’s schedule (or their spouse)—also allegedly made Vince an
insured for purposes of UM/UIM coverage. 
          The DOC endorsement provided in pertinent part as follows:
B.CHANGES IN LIABILITY COVERAGE
 
1.Any auto you don’t own, hire or borrow is a covered auto
for LIABILITY COVERAGE while being used by any
individual named in the Schedule or by his or her spouse
while a resident of the same household except: [naming
certain exceptions] . . . .
 
2.The following is added to WHO IS AN INSURED:
 
Any individual named in the Schedule and his or her
spouse, while resident of the same household, are insureds
while using any covered auto described in paragraph B. 1.
of this endorsement.
 
. . .
 
E.ADDITIONAL DEFINITION
 
The following is added to the DEFINITIONS Section:
 
“Family member” means a person related to the individual
named in the Schedule by blood, marriage or adoption who is a
resident of the individual’s household, including a ward or foster
child.

(Emphasis in original.) Under a heading labeled “SCHEDULE” within the DOC
endorsement, the words “per schedule on file with co.” appear in the space for “name
of individual” insured under the endorsement.



          American moved for summary judgment on the grounds that (1) no schedule
of named individuals for the DOC endorsement was ever created or on file with
American, and Vince was thus not entitled to this endorsement’s coverage, and (2)
the DOC endorsement extended only liability coverage, not UM/UIM coverage, to
named individuals, and UM/UIM coverage was thus unaffected by the DOC
endorsement. Debra responds by arguing that a spreadsheet (which she calls a
“schedule”) of vehicles that also listed Vince and other drivers was the “schedule on
file with co.” to which the DOC endorsement referred.
          Again, for purposes of argument only, and without deciding whether Debra’s
implicit premise is correct, we accept her premise that UM/UIM coverage extends,
as a matter of law, to those individuals to whom the DOC endorsement extends
liability coverage.


 Even with our accepting Debra’s premise, however, the policy
does not extend UM/UIM coverage to her.
          Debra’s argument stands or falls on two pieces of evidence: (1) Vince’s
affidavit and (2) the “schedule” that she claims extended DOC coverage to Vince, and
thus to her, as Vince’s spouse.


 Vince’s affidavit reads in pertinent part:
I have been designated as the driver of a company vehicle on numerous
documents prepared by NES. As the operations manager I have been
involved in the preparation of schedules of assigned vehicles for
insurance purposes. I am a designated person on the August 9, 2000
schedule attached to this motion . . . .

The August 9, 2000 “schedule” is actually a spreadsheet of the vehicles owned by
some NES-affiliated businesses in Houston, along with a notation of the vehicles’
identification number, license plate, mileage, purchase date, driver and his or her
position in the company, and condition. There is also a column, styled “renewal,” for
each vehicle. That column, completed for only some vehicles, contains a date,
without further explanation.
          Debra’s evidence neither proved conclusively, nor raised a fact issue
concerning, whether anyone was listed for liability coverage under the DOC
endorsement. The “Schedule” to which the DOC endorsement referred was
necessarily one of persons, not of vehicles. The August 9 spreadsheet that Debra
produced is primarily a list of vehicles, not of persons. This is evident because the
vast majority of the information on the spreadsheet concerns the listed vehicles (e.g.,
VIN, license plate, purchase date, mileage, and condition), not the individuals to
whom they were assigned, and drivers were not even listed for all of the vehicles. 
Moreover, Vince’s affidavit itself attests to “schedules of assigned vehicles,” rather
than to schedules of individuals for liability coverage. Indeed, his affidavit does not
state for what “insurance purposes” the spreadsheets were developed or by whom
they were prepared. Even when viewed in the most favorable light to Debra, the
spreadsheet and Vince’s affidavit are simply no evidence of a schedule of DOC-covered individuals.
          In contrast, American’s evidence—affidavits from the policy’s underwriter, the
senior vice-president of NES’s insurance broker, and NES’s chief financial
officer—stated that no schedule of individuals was ever created or attached to the
policy for DOC coverage; the affiants had never seen the August 9, 2000 spreadsheet
while writing the policy; the spreadsheet was not attached to the policy; no schedule
was attached to the policy after the policy’s issuance; and although the insurance
broker generated some spreadsheets (but not the August 9 one) listing NES’s vehicles
for purposes of renewing coverage generally, those spreadsheets were not DOC
schedules and did not list individuals. For the reasons stated above, Vince’s affidavit
and the April 9 spreadsheet did not raise a fact issue concerning whether a schedule
of DOC insureds existed. 
          Accordingly, we hold that the trial court did not err in rendering summary
judgment for American, and in denying summary judgment for Debra, because
nothing within the DOC endorsement provided Debra with UM/UIM coverage under
these circumstances. Cf. Wausau Underwriters Ins. Co. v. Baillie, 281 F. Supp. 2d
1307, 1315-16 (M.D. Fla. 2002) (holding that individual not otherwise entitled to
UM/UIM coverage on business automobile policy was not entitled, by virtue of DOC
endorsement, to UM/UIM coverage, when evidence showed conclusively that no
schedule of individuals for DOC coverage existed), aff’d, 2003 WL 22239909 (11th
Cir. 2003). We thus overrule issue three.
D.      Fact Issues Concerning Whether Debra Resided With Vince
          In issue four, Debra argues that the trial court erred in granting summary
judgment for American because a fact issue existed on whether she resided with
Vince on the date of the accident. Given our holdings above, we need not reach this
issue.
Conclusion
          We affirm the judgment of the trial court.
 


                                                                        Tim Taft
                                                                        Justice
Panel consists of Justices Taft, Hanks, and Higley.